PATRICK J. WHALEN, ESQUIRE (PW3066)
Attorney at Law
109 S. WARREN STREET
TRENTON, NEW JERSEY 08608
Phone: (609) 393-6970
Fax:    (609) 393-6971
Patrick@pwhalenlaw.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| C.W. AND K.W., individually and on behalf of their minor son, BILLY ROE,<br>　　　　Plaintiffs,<br><br>v.<br><br>MANASQUAN BOARD OF EDUCATION; MANASQUAN SCHOOL BOARD OFFICERS & MEMBERS; MANASQUAN BOARD OF EDUCATION PRESIDENT EUGENE CATTANI, JR., in his individual and official capacity; MANASQUAN SUPERINTENDENT DR. FRANK KASYAN, in his individual and official capacity; MANASQUAN ELEMENTARY SCHOOL;  COLLEEN GRAZIANO, MANASQUAN ELEMENTARY SCHOOL PRINCIPAL, in her individual and official capacity; RICHARD KIRK, MANASQUAN ELEMENTARY SCHOOL ASSISTANT PRINCIPAL in his individual and official capacity; ANTHONY CINELLI, MANASQUAN ELEMENTARY SCHOOL ANTI-BULLYING SPECIALIST, in his individual and official capacity; MARGARET POLAK, MANASQUAN ELEMENTARY SCHOOL SPECIAL EDUCATION SUPERVISOR, in her individual and official capacity; THERESA SAVAGE, MANASQUAN ELEMENTARY SCHOOL PSYCHOLOGIST, in her individual and official capacity; JUSTIN ROACH, MANASQUAN SUPERVISOR OF ELEMENTARY INSTRUCTION, in his | CIVIL ACTION<br><br>CASE NO.:<br><br><br><br>**FIRST AMENDED COMPLAINT and JURY DEMAND** |

1

individual and official capacity; BRIAN
MCCANN, MANASQUAN ELEMENTARY
SCHOOL TEACHER, in his individual and
official capacity; **JESSICA WOYTOWICZ
MANASQUAN ELEMENTARY SCHOOL
TEACHER, in her individual and official
capacity; SANDRA COLLINS MANASQUAN
ELEMENTARY SCHOOL AFTER-CARE
TEACHER, in her individual and official
capacity; SAMANTHA HAGEL, in her
individual and official capacity; ELIZABETH
MCLAUGHLIN, MANASQUAN
ELEMENTARY SCHOOL
PARAPROFESSIONAL, in her individual and
official capacity;;** JOHN/JANE DOES #1-15,
individually and in their official capacity; and
XYZ CORPORATIONS #1-10, individually,
jointly, and severally and in the alternative,
Defendants.

Plaintiffs, C.W. and K.W., individually and on behalf of their minor son, Billy Roe,

(a fictitious name to protect his identity) through their undersigned Counsel, for their

Complaint against Defendants: Manasquan Board of Education; Manasquan School Board

Officers & Members; Manasquan Board of Education President Eugene Cattani, Jr.;

Manasquan Superintendent Dr. Frank Kasyan, in his individual and official capacity;

Manasquan Elementary School; Manasquan Elementary School Principal Colleen

Graziano, in her individual and official capacity; Manasquan Elementary School Assistant

Principal Richard Kirk (*ret'd*), in his individual and official capacity; Anthony Cinelli,

Manasquan Elementary School Anti-Bullying Specialist, in his individual and official

capacity; Margaret Polak, Manasquan Elementary School Special Education Supervisor, in

her individual and official capacity; Theresa Savage, Manasquan Elementary School

Psychologist, in her individual and official capacity; Justin Roach, Manasquan Supervisor

2

of Elementary Instruction, in his individual and official capacity; Brian McCann, Manasquan Elementary School Teacher, in his individual and official capacity; **Jessica Woytowicz, Manasquan Elementary School Teacher, in her individual and official capacity; Sandra Collins, Manasquan Elementary School After-Care Teacher, in her individual and official capacity; Samantha Hagel, Manasquan Elementary School Teacher, in her individual and official capacity; Elizabeth McLaughlin, Manasquan Elementary School Paraprofessional, in her individual and official capacity**;; John and Jane Does 1-10; and XYZ Corporations 1-10, allege as follows:

## I.   <u>INTRODUCTORY STATEMENT</u>

1.     This action is brought pursuant to violations of the United States Constitution, the United States Civil Rights Act (Section 1983), the New Jersey Law Against Discrimination, and the New Jersey Constitution.

2.     Defendants failed to prevent and/or correct a hostile educational environment and failed to protect Plaintiff from reasonably foreseeable harm.

3.     Defendants also created and aggravated a dangerous situation, and their misconduct included unconstitutional policies, practices, and customs. Defendants also failed to accommodate Plaintiff Billy Roe as a result of a series of bullying assaults and failed to protect him from retaliation from their inadequate bullying investigations. The various acts/incidents of bullying, discrimination, intimidation, threats, and retaliation occurred at the Manasquan Elementary School. Billy Roe experienced, for nearly 4 years, an extremely hostile educational environment.   That hostility was based on protected characteristics and in retaliation for him and his parents engaging in protected activity.

3

## II. JURISDICTION

4.      Jurisdiction over Plaintiffs' claims is conferred on this Court, pursuant to 28 U.S.C. §1331, because this lawsuit presents significant federal questions of law involving the U.S. Constitution.   Plaintiffs request the Court to exercise jurisdiction over their pendent State claims pursuant to 28 U.S.C. §1367.

## III. VENUE

5.      Venue is proper within the New Jersey District Court pursuant to 28 U.S.C. 1391(b) based on the fact that the practices alleged below occurred in New Jersey.

## IV. PARTIES

6.      Plaintiffs, C.W. and K.W., individually and on behalf of their minor son, Billy Roe, reside in New Egypt, New Jersey.   They previously resided at 45 Fisk Street, Manasquan, New Jersey 08736, but were forced to leave their home and relocate as a direct result of Defendants' misconduct and what their son was forced to endure.

7.      Plaintiff Billy Roe was born on June 14, 2007.   At the time of the onset of the discrimination, bullying, intimidation and harassing incidents, Plaintiff was approximately 8 years old.

8.      Plaintiff Billy Roe was at all times relevant herein a duly admitted student attending Manasquan Elementary School located at 169 Broad Street, Manasquan, New Jersey 08736.   The hostile educational environment began when he was in the 3rd grade.

9.       Defendants Manasquan Board of Education and Manasquan School Board Officers & Members are an entity existing under the laws of the State of New Jersey, with official offices located at 169 Broad Street, Manasquan, New Jersey 08736. These

4

Defendants were responsible for the care, custody, and control of the students within the Manasquan School District.

10.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment and bullying and the subsequent misconduct thereafter, Defendant Eugene Cattani, Jr., was the President of the Manasquan Board of Education. He is being sued in his individual and official capacity.  During all times pertinent to the Complaint, Defendant Eugen Cattani, Jr., acted in the course of his employment as an agent, servant, and employee of the Manasquan School District.

11.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment and bullying and the subsequent misconduct thereafter, Defendant Dr. Frank Kasyan was the Superintendent of the Manasquan School District. He is being sued in his individual and official capacity.  During all times pertinent to the Complaint, Defendant Dr. Frank Kasyan acted in the course of his employment as an agent, servant, and employee of the Manasquan School District.

12.     Defendant Manasquan Elementary School is an entity existing under the laws of the State of New Jersey, with official offices located at 168 Broad Street, Manasquan, New Jersey 08736. This Defendant was responsible for the care, custody, and control of the students within the Manasquan Elementary School.

13.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment and bullying, and the subsequent misconduct thereafter, Defendant Colleen Graziano was the Principal of Manasquan Elementary School.  She is being sued in her individual and official capacity.  During all times pertinent to the

Complaint, Defendant Colleen Graziano acted in the course of her employment as an agent, servant, and employee of the Manasquan School District.

14.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment, and bullying, and the subsequent misconduct thereafter, Defendant Richard Kirk was the Assistant Principal of Manasquan Elementary School.  He is being sued in his individual and official capacity. During all times pertinent to the Complaint, Defendant Richard Kirk acted in the course of his employment as an agent, servant, and employee of the Manasquan School District.  Upon information and belief, Defendant Richard Kirk retired in 2020.

15.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment, and bullying, and the subsequent misconduct thereafter, Defendant Anthony Cinelli was the Anti-Bullying Specialist at Manasquan Elementary School.  He is being sued in his individual and official capacity. During all times pertinent to the Complaint, Defendant Anthony Cinelli acted in the course of his employment as an agent, servant, and employee of the Manasquan School District.

16.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment, and bullying, and the subsequent misconduct thereafter, Defendant Margaret Polak was the Special Education Supervisor at Manasquan Elementary School.  She is being sued in her individual and official capacity. During all times pertinent to the Complaint, Defendant Margaret Polak acted in the course of her employment as an agent, servant, and employee of the Manasquan School District.

17.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment, and bullying, and the subsequent misconduct thereafter, Defendant Theresa Savage was the School Psychologist at Manasquan Elementary School. She is being sued in her individual and official capacity. During all times pertinent to the Complaint, Defendant Theresa Savage acted in the course of her employment as an agent, servant, and employee of the Manasquan School District.

18.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment, and bullying, and the subsequent misconduct thereafter, Defendant Justin Roach was the Supervisor of Elementary Instruction for Manasquan Elementary School.  He is being sued in his individual and official capacity. During all times pertinent to the Complaint, Defendant Justin Roach acted in the course of his employment as an agent, servant, and employee of the Manasquan School District.

19.     At all times relevant herein, specifically, at the time of the discrimination, hostile educational environment, and bullying, and the subsequent misconduct thereafter, Defendant Brian McCann was the 5th Grade teacher of Plaintiff Billy Roe at Manasquan Elementary School.  He is being sued in his individual and official capacity. During all times pertinent to the Complaint, Defendant Brian McCann acted in the course of his employment as an agent, servant, and employee of the Manasquan School District.

20.     **Defendant Jessica Woytowicz was the 3rd Grade teacher of Plaintiff Billy Roe at Manasquan Elementary School.  She is being sued in her individual and official capacity. During all times pertinent to the Complaint, Defendant Jessica Woytowicz**

acted in the course of her employment as an agent, servant, and employee of the Manasquan School District.

21.     Defendant Samantha Hagel was the 4th Grade teacher of Plaintiff Billy Roe at Manasquan Elementary School.  She is being sued in her individual and official capacity. During all times pertinent to the Complaint, Defendant Jessica Woytowicz acted in the course of her employment as an agent, servant, and employee of the Manasquan School District.

22.     Defendant Sandra Collins was the After-Care Teacher of Plaintiff Billy Roe at Manasquan Elementary School.  She is being sued in her individual and official capacity. During all times pertinent to the Complaint, Defendant Sandra Collins acted in the course of her employment as an agent, servant, and employee of the Manasquan School District.

23.     Defendant Elizabeth McLaughlin was the paraprofessional for Plaintiff Billy Roe at Manasquan Elementary School.  She is being sued in her individual and official capacity. During all times pertinent to the Complaint, Defendant Elizabeth McLaughlin acted in the course of her employment as an agent, servant, and employee of the Manasquan School District.

24.     Defendants: Manasquan Board of Education; Manasquan School Board Officers & Members; Manasquan Board of Education President Eugene Cattani, Jr.; Manasquan Superintendent Dr. Frank Kasyan, in his individual and official capacity; Manasquan Elementary School; Manasquan Elementary School Principal Colleen Graziano, in her individual and official capacity; Manasquan Elementary School Assistant

Principal Richard Kirk (ret'd), in his individual and official capacity; Anthony Cinelli, Manasquan Elementary School Anti-Bullying Specialist, in his individual and official capacity; Margaret Polak, Manasquan Elementary School Special Education Supervisor, in her individual and official capacity; Theresa Savage, Manasquan Elementary School Psychologist, in her individual and official capacity; Justin Roach, Manasquan Supervisor of Elementary Instruction, in his individual and official capacity; Brian McCann, Manasquan Elementary School Teacher, in his individual and official capacity; **Jessica Woytowicz, Manasquan Elementary School Teacher, in her individual and official capacity; Sandra Collins, Manasquan After Care Teacher, in her individual and official capacity; Samantha Hagel, Manasquan Elementary School Teacher, in her individual and official capacity; Elizabeth McLaughlin, Manasquan Elementary School Paraprofessional, in her individual and official capacity,** hereinafter will be referred to as the "MBOE Defendants".

25.     At present, the identity(ies) of Defendant(s) John/Jane Does #1-10, and XYZ Corporations #1-10 are unknown.  At all times relevant herein, Defendants, John/Jane Does #1-10 and XYZ Corporations #1-10, such names being fictitious designations and names without specifically as to the number or types of such persons or entities, were unknown Defendant parties, policy makers, decision makers, administrators, teachers, staff members, employees and agents of the Manasquan School District and Manasquan Board of Education, including the members of same which (a) had responsibility for the care, custody, protection, and safety of Plaintiff; (b) in any way owned, possessed, controlled, managed, supervised, or maintained any part of the premises known as Manasquan

Elementary School, where Plaintiff was discriminated against, retaliated against, bullied, intimidated, physically abused, threatened and otherwise harassed; and (c) were responsible for Billy Roe and the supervision of students at the Manasquan Elementary School, including the students who have continuously harassed, discriminated against, and bullied Billy Roe.

26.     Plaintiffs assert causes of action in this lawsuit which are based either on common law, violations of the United States Constitution and the New Jersey Constitution, and/or express statutory law, including, specifically, the United States Civil Rights Act (42 U.S.C. §1983) and the New Jersey Law Against Discrimination

## V.     FACTUAL BACKGROUND COMMON TO ALL COUNTS.

27.     In 2015, Plaintiffs C.W. and K.W. complained about a certain teacher who, upon information and belief, was a prominent figure in the Manasquan School District.

28.     Subsequent to Plaintiffs complaining about this teacher, they were met with nothing but opposition from the School and the School District every step of the way concerning their young son and his educational needs.

29.     Plaintiffs continued to object to and complain about the mishandling of their son and his educational needs, and, again, the MBOE Defendants ignored their complaints or took steps to make them worse.

30.     This was unlawful retaliation.

31.     From approximately 2015 through his leaving the School District in 2020, Billy Roe had experienced an extremely hostile educational environment while a student in the Manasquan Public School District.

10

32.    Despite Billy Roe's, and his parents' multiple complaints and requests for assistance, Billy Roe had been repeatedly bullied, discriminated against, and harassed for many years.

33.    In 2016, Defendant Brian McCann physically assaulted Plaintiff Billy Roe in the lunchroom.  Plaintiff Billy Roe was playing with a toy during clean up time.

34.    Defendant McCann stormed over to Plaintiff and grabbed both of his wrists and shook them until the toy fell out of Plaintiff's hand and onto the floor.

35.    Plaintiff's parents complained about this incident to the School and the School did nothing.

36.    The following are some additional examples of the hostile educational environment, harassment, retaliation, and discrimination that Plaintiff Roe endured:

### I.    <u>2017</u>

A.    There was an incident between Billy Roe and a fellow student that resulted in an argument.  The Child Study Team wanted to interview Billy Roe and Billy Roe indicated that he did not want to speak until his Mom and Dad were present.  Billy Roe's parents were not contacted, and instead School District employee Defendant Theresa Savage blocked the door so Billy Roe could not leave and told Billy Roe he could not go to the bathroom or get a drink of water unless he first talked to the CST people about the incident.

B.    One day Plaintiff Billy Roe came home with a paper, which contained Post-It Notes with "check marks" on them (a total of 72). Evidently, the Post-It Notes were inadvertently left on the paper.  Plaintiff's parents inquired about same and were told that each "check mark" represented an outburst by Plaintiff Billy Roe. However, Plaintiff's parents were told by teachers that Plaintiff Billy Roe had had a good day.

### II.    <u>2018</u>

C.    Plaintiff Billy Roe was not allowed to do a project showing "how to post a video" on *YouTube*. He was told it was inappropriate. However, that same exact

11

week, when Plaintiff Billy Roe reported another student's inappropriate behavior posted on a *YouTube* video, wherein the student was mimicking a puppet masturbating, the Defendants found that acceptable.  Indeed, Plaintiff Billy Roe voiced his opinion that he felt it was inappropriate and disgusting to a Staff Member of the Child Study Team, Nancy Sanders. Ms. Sanders told Plaintiff it was "culturally acceptable."

D.      Defendant McCann spent most of the days watching Plaintiff Billy Roe and writing down, in a little black notebook, every move Plaintiff made throughout the school day. Defendant McCann also used a "clicker" every time he believed Plaintiff was doing something wrong.

E.      Between the "check marks" and "clicker", Plaintiff Billy Roe felt he was under a microscope, and it felt hostile.

F.      Defendant Kirk told Plaintiff he was only allowed to use the bathroom twice a day.

### III.   <u>2019</u>

G.      In the Spring**,** Billy Roe's 5th Grade teacher, Defendant Brian McCann was 4 inches from Billy Roe's face screaming at him.  The incident resulted in Billy Roe being removed from Defendant McCann's class.

H.      On **May 31, 2019**, Billy Roe was the victim of a verbal attack on social media that was written, witnessed, and reported all during a School Band field trip.  During the field trip, a student repeatedly punched and kicked Bily Roe's seat from behind and continuously verbally ridiculed him in front of the other students. This same student then told Billy Roe that he was going to post inappropriate things about Billy Roe on social media. True to that threat, that same student posted on *Instagram*, as a comment to one of Billy Roe's pictures, "*Cringey and racist he can't get any worse. Oh wait - he can*".  Billy Roe reported the entire incident to Defendants.

On the way home from that same field trip, that same bully/student continued to physically and verbally abuse Billy Roe.  Billy Roe told that student to "Stop!".  Billy Roe's request was met with that student bragging: "*I've been to the principal's office 5 times this year all because of you and I never get in trouble.*" (He was correct.)

I.      On **September 23, 2019**, several peers set up an afterschool meeting with Billy Roe so they could attack him and provoke him.  These students set up a location at a park and there were approximately 10 students there to fight and provoke Billy Roe. One of the female students attempted to hit Plaintiff Billy Roe.

Upon information and belief, one of the primary bullies was not disciplined and not

even investigated by the school.  That same student again slandered Billy Roe by calling him a "Racist" and again bragged about how the school did nothing about his repeated misconduct towards Billy Roe.

J.      In **late September 2019**, his classmates sang a derogatory song directly targeting him, with the goal of provoking him to get upset, i.e., to "break" him. These peers were aware of and deliberately playing upon his disabilities, and School representatives were allowing same to unfold and go unchecked.

K.      On or about **September 30, 2019**, Billy Roe was pushed to another breaking point, resulting in him acting out, truly in an effort to defend himself and get the hostilities, bullying, and harassment to stop.  As a result, he was unlawfully suspended for 3 weeks and not allowed to return until a Psychologist cleared him. The background events leading to this suspension are critical illustrations of the hostile educational environment Billy Roe had been left to suffer in.  That same day, in Math class, certain kids sang the derogatory song to him. During that same Math Class, where the students were singing the song that they made up about Billy Roe, another student "T.C." repeatedly, in an effort to madden and break Billy Roe (which would succeed) taunted him by stating his name over and over ("Billy Roe", "Billy Roe", "Billy Roe", etc.) and kicking his chair.

L.      Billy Roe returned to school in **October 2019**, after the unlawful suspension. Upon his return, there were several additional incidents of bullying (one inside the school and two off school grounds). Defendant Assistant Principal Kirk was informed of same and was even offered physical proof by Billy Roe.  However, Defendant Kirk ignored and/or refused to even consider the information/evidence and/or refused to provide same to Defendant Anthony Cinelli, the School's Counselor and Anti-Bullying Specialist.

M.      Upon returning from suspension, the bullying and intimidation did not cease. In front of one of the Classroom Observers, student "T.C." stated to Billy Roe: "*We all did better at Math because you were not here*".

N.      During this pertinent time period, the family received no information nor documentation regarding whether or not the School conducted any HIB investigations into these additional incidents.

O.      In **December 2019**, there were several more disturbing incidents, which reflect the hostile educational environment that Billy Roe continued to experience.  It was clear that the group of kids that wished to torment and break Billy Roe, knew the school had not and would not do anything to them, so they continued with their harassment and bullying.  The following is a short summary of what occurred:

One of Billy Roe's safe havens, to avoid the hostilities and bullying, over his last few years at Manasquan (since his parents were forced to remove him from the Aftercare Program), had been the local Library.  The same group of bullies had apparently realized this, and, on Monday, **December 16, 2019**, they sought him out there.  During the confrontation, the kids made the following comments to Billy Roe including:

    i.   A female student attempted to provoke Billy Roe to hit her, telling him: "*Square up! Square Up! You wanna go?*"

    ii.   Stating that **Billy Roe is "*gay***";

    iii.   **Mocking** him as to the **size of his genitals**;

    iv.   Same female student telling Billy Roe that he needs to **buy himself a bra** – "*Go to Walmart and **get a bra**";

    v.   Same female student asking Billy Roe to be in their "**Drag Show**";

    vi.   Same female student telling Billy Roe to "***cut off* [his] *nipples* and *start acting like a man*";

    vii.   Same female student telling him: "*We don't need to hear your moaning while you're **jerking off**";

    viii.   Same female student continued to bait Billy Roe into hitting her "*C'mon, **Let's fight! Punch me! Punch me***!*"

Incredibly, the MBOE Defendants were provided with the audio of these comments made by the female student and found same to not be discriminatory nor sexually harassing.  Once again, the Defendants did nothing.
Another male student (who had been a continuous tormenter of Billy Roe) repeatedly tried to provoke Billy Roe with physical violence, in a very threatening and hostile way.

These same group of bullying students mocked Billy Roe for not having any friends.

P.    On that same date, (December 16, 2019), the main bully sent a text message to Billy Roe, again, calling him a "Racist".  This was not the first time that students had made that false accusation against Billy Roe. Indeed, calling him a "racist" was defamatory and a misrepresentation that had been spread by students about Billy Roe for almost a year. The School District did nothing meaningful to address this. This was a dangerous weapon, used against Billy Roe almost a year earlier - - used as a way to further isolate and demean Billy Roe. Upon information and belief, the

School District did nothing about same.

37.     Initially, in December 2019, Billy Roe went to Defendant Anthony Cinelli to report the multiple incidents of HIB.  Defendant Cinelli dismissed Billy Roe, telling him that he believed Billy Roe was out to get the kids.  Defendant Anthony Cinelli did not perform an investigation, despite that being his job.

38.     A majority of the bullying incidents surrounding Plaintiff Billy Roe involved the students taunting and harassing him about his gender and sexual orientation.

39.     These incidents occurred when Plaintiff was only 12-13 years old.

40.     One time, 2 male students took Plaintiff's shoe off, threw it in the middle of a busy road, and told him "*Go get it faggot*!"

41.     The bullies would repeatedly call Plaintiff "Gay", "Fag", and "Queen" and tell him that his clothes were "gay".

42.     Plaintiff was constantly being called "gay" by the students, that he began to get confused about his own sexuality.

43.     Plaintiff Billy Roe believed that Defendant Anthony Cinelli would be the best person to speak to about this confusion because Defendant Cinelli had a Gay Pride poster hanging in his office; Plaintiff was wrong.

44.     Instead of offering any meaningful guidance or advice to Plaintiff, Defendant Cinelli snickered at Plaintiff's concern and disregarded him.

45.     The above incidents constitute discrimination, harassment, intimidation, bullying, and retaliation.

46.     Some of the allegations were investigated (only after Plaintiffs' Counsel

pushed for same) and, incredibly, the allegations were not deemed to be "harassment" by the MBOE Defendants.

47.     Plaintiff Billy Roe could no longer take the bullying, hostility, and discrimination. He was exhibiting symptoms of suicidal ideation, depressions and anxiety directly following these incidents.

48.     Billy Roe did not return back to the School after the holiday break in January 2020.

49.     Instead, Plaintiff Billy Roe was sent by his parents to attend "Partial Hospitalization Therapy", which is an all-day program through High Focus in Freehold, for several weeks.

50.     Even with Plaintiff Billy Roe not attending the School, many of the same bullies continued to harass Billy Roe. On **January 10, 2020**, around 5:00 p.m., while Billy Roe was walking home, the bullies, some from his grade, were taunting him and making fun of him for not being at school. This was at a local park at the end of the street of Plaintiffs' home.

51.     The above specific incidents clearly reflected an ongoing pattern of hostility, bullying, discrimination, and harassment directed at Billy Roe.

52.     Upon information and belief, no actual or meaningful investigations into the numerous prior complaints and events involving harassment, bullying, discrimination and even assault, where Billy Roe was the clear victim, were ever undertaken by the School.

53.     Rather than conduct a meaningful investigation, prevent and eradicate this hostile educational environment, or accommodate Plaintiff Billy Roe, given the injuries,

16

discrimination and bullying he sustained, the School Officials, including specifically, Defendant Principal Graziano, simply ignored the Plaintiffs' requests.

54.     Throughout 2019, the bullying and harassment continued and became worse.

55.     The hostility, bullying, and the MBOE Defendants' negligent mishandling of the entire situation left the Plaintiffs seriously injured and caused them to sustain severe emotional and mental distress.

56.     Obviously, Billy Roe's parents had to suffer by watching the impact that these incidents had on their son in these crucial developing years.

57.     In addition, the Plaintiffs incurred significant financial losses, which include being forced to sell their home, move, and change schools.

58.     Upon information and belief, the Manasquan Board of Education, the School District, and various Supervisory Officials, employees, and agents of same, had been put on notice of the bullying events, but failed to take the necessary steps to prevent same and otherwise protect Billy Roe.

59.     The MBOE Defendants were entrusted with the care of, supervision of, and safekeeping of the students, including Billy Roe, required by law to attend school.   The Defendants were responsible for the care, supervision, and safe keeping of Billy Roe and the other students.

60.     Simply stated, a long-term, unacceptable, hostile educational environment existed for Billy Roe - - and the internal damages these events caused are permanent, severe and tragic.

61.     The MBOE Defendants, including their agents, representatives and employees, were aware of what Billy Roe was forced to endure.

62.     The MBOE Defendants should have prevented and/or ended the hostile educational environment that existed for this young boy.

63.     In addition to the emotional damages endured, there has been a significant financial impact upon the family.

64.     As a result of the MBOE Defendants refusing to meaningfully investigate the continuous bullying incidents, Plaintiffs C.W. and K.W. no longer felt that their son was safe at the School, walking home from the School, or even walking around in the neighborhood, in general.

65.     Plaintiffs had no choice but to remove Billy Roe from Defendant school to ensure his safety and emotional well-being and to sell their home and move to a different town so that Billy Roe could attend a different school. This was the only way to get the bullying and harassment to stop.

66.     As a result of the MBOE Defendants' inaction, negligent response, and/or retaliatory response, Billy Roe was further victimized by those obligated by law to (a) prevent bullying (HIB), prevent and punish discrimination, and prevent a hostile educational environment; and (b) assist and provide appropriate services to those victimized by such unlawful conduct.

67.     Billy Roe's rights under the New Jersey Law Against Discrimination, the HIB laws, and the U.S. and State Constitutions have been violated.

18

68.     On or about the aforementioned times and dates, the MBOE Defendants acted under the color of law, acting intentionally and/or with deliberate indifference and/or gross negligence, in executing or failing to execute customs, practices, rules, procedures and/or policies, and otherwise engaged in acts or omissions such as to deprive Billy Roe of his constitutional rights and privileges protected under the United States and New Jersey Constitutions, common law and statutory law, including the New Jersey Law Against Discrimination.

69.     When Plaintiff Billy Roe was 2 years old. He was diagnosed with Asperger's Syndrome, and, subsequently diagnosed with ADHD as well as ADD. The bullying, harassment, and discrimination were directly related to, at least in part, to his disabilities.

### Plaintiff's First Amendment Claims.

70.     **Certain specific** MBOE Defendants also, directly and **personally, and through deliberate indifference and the exercise of their supervisory authority**, allowed Billy Roe's First Amendment rights to be violated and/or retaliated against him for exercising same.

71.     **The First Amendment violations described below, along with the deliberate indifference exhibited by, and supervisory authority utilized by Defendant Principal Graziano and Defendant Assistant Principal Kirk, demonstrate the existence of an unconstitutional policy, practice and custom to interfere with, limit and even eliminate, a student's (such as Plaintiff Billy Roe) First Amendment rights, including limiting and preventing speech favorable to (a) Jesus and Christianity; and (b) to conservative political figures such as Donald Trump.**

72.     In 2016 and 2017, Plaintiff Billy Roe was obviously a young boy, however, he was very advanced in certain ways with respect to class subject materials and current events.

73.     Billy Roe had been blocked, harassed, retaliated against, and even disciplined, when he attempted to express his opinions and beliefs on issues of politics and religion.

74.     For example, in 2016, Billy Roe's class was asked to do a "My Hero Exercise", where they identified and discussed one of their heroes.

75.     Plaintiff Billy Roe wanted to talk about Donald Trump as his hero.

76.     Plaintiff Billy Roe was prohibited from doing so and the School Staff**, specifically, Defendants Mrs. Elizabeth McLaughlin (His Paraprofessional) and his Teacher Defendant Jessica Woytowicz,** told him he was not allowed to do his project about Trump.

77.     Plaintiff's parents complained to the School Staff**, specifically, they directly complained to the School's Principal and Assistant Principal, Defendants Graziano and Kirk,** about this violation of Plaintiff Billy Roe's constitutional rights, **specifically, this deliberate interference with his political speech**.

**78.     As a result of Plaintiff's parents' complaints, the MBOE Defendants suggested and held a meeting with Mr. and Mrs. Roe.  Defendants Graziano, Polak, Roach, and McCann were in attendance at this meeting.**

**79.     At that meeting, Plaintiff's parents were told by the Individual MBOE Defendants that because Donald Trump was involved in politics, Billy Roe was not allowed to do his project on Donald Trump. This was inconsistent with the Defendants allowing other students to discuss and do projects about other political figures.**

20

80.     **Defendants Graziano and Kirk implemented the policies, practices and customs of the MBOE by approving of the suppression of Plaintiff's free speech.**

81.     **In response to these First Amendment interference issues, after being made aware of same, Policymaker Defendants Graziano and Kirk did not correct the violation and did not put a stop to the interference with Plaintiff's speech.**

82.     **Instead, Defendants Graziano and Kirk approved of that interference with Plaintiff's speech.**

83.     Another example of Plaintiff Roe's First Amendment rights being violated is, around Christmas time in 2017, Billy Roe was scolded by his teacher**, Defendant Margaret Polak, and his After-Care Teacher, Defendant Sandra Collins,** because he spoke about Jesus' birth and Jesus' significance for Christmas.

84.     He was instructed and warned **by Defendants Polak and Collins** not to talk about Jesus at Christmas time.

85.     Plaintiff Billy Roe completed the Christmas project.  His work included a religious symbol.

86.     His teacher**, Defendant Polak,** hung up all other students' projects, but not Plaintiff's, despite those other students' projects also containing other religious symbols.

87.     Plaintiffs' parents complained to Billy Roe's teacher**, Defendant Polak,** about this, but, again, that complaint went nowhere.

88.     **Defendant Polak refused to allow Plaintiff's project to be hung up like all of the other students.**

89.     **After that complaint went nowhere, Plaintiff's parents again took their First**

Amendment complaints to the policymaker level: They complained about their son's religious speech being restricted from doing this Christmas project directly to Defendants Graziano and Kirk.

90.     These Policymaker Defendants, Graziano and Kirk, did not take steps to put a stop to the interference with Billy Roe's speech.  They did not take steps to ensure that his project was hung up and displayed like the other students.

91.     Instead, Defendants told Plaintiffs that Billy Roe could "complete the Jesus project at home, but it would not be displayed or shared with the other students' projects."

92.     The deliberate indifference exhibited by Defendants Graziano and Kirk with respect to the above First Amendment violations, and Defendant Graziano and Kirk's exercise of supervisory authority to directly and personally approve, reinforce and perpetuate the interference with Plaintiff Billy Roe's protected speech, establish, illustrate the existence of and are substantial evidence of the MBOE Defendants' unconstitutional policy, practice and custom of limiting, preventing and interfering with speech, including specifically political and religious speech that they do not like - - such as positive speech concerning Christianity, Jesus, and Donald Trump.

93.     The direct and personal responses of Defendants Graziano and Kirk confirm that Defendant teachers and staff (Ms. Polak, Mrs. McLaughlin, Ms. Waytowicz, and Mrs. Collins) were following and implementing the MBOE's policies, practices, and customs as to tolerating and promoting interference with certain protected First Amendment activities and speech.

94.     Yet another illustration of Defendants toleration of and direct

participation in interference with Plaintiff Billy Roe's protected First Amendment activities occurred in 2018.

95.    **At that time**, Plaintiff Billy Roe was scolded **by Defendant McCann and by Defendant Samantha Hagel** for not participating in the Buddhist prayer bowl ritual during morning exercises.

96.    Plaintiff had the constitutional right to not participate.

97.    **Plaintiff's parents complained about this forcing of their child to participate in a religious activity at school to Defendants Graziano and Kirk**

98.    Plaintiff Billy Roe was also yelled at and taken out of class **by Defendant McLaughlin,** when, during an in-class discussion, Billy Roe disagreed with the lesson and said that "our country is a constitutional Republic and not a Democracy.

99.    Plaintiff's parents complained about the above incident (Paragraph 98) to Defendants Graziano, Kirk, Polak, Roach, and McCann.

100.    Plaintiff's parents specifically asked these Individual Defendants why their son was not allowed to speak his mind nor ask questions related to the subject of Democracy and were told by Defendant Woytowicz that is was "disruptive".

101.    Again, the hostile educational environment, comprised of both discrimination and bullying was never resolved at the Manasquan Elementary School, and Billy Roe did not finish out his school year there.

## COUNT ONE
### NEGLIGENCE
**(As to Defendants Manasquan Board of Education, Principal Graziano, Assistant Principal Kirk and Theresa Savage)**

102.     The Plaintiffs repeat each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth at length herein.

103.     The incidents described above and the harm inflicted on the Plaintiffs was caused by the negligence of the MBOE Defendants, their agents, servants, and employees, in creating the aforesaid conditions, allowing the aforesaid conditions to exist, and/or failing to take reasonable steps to prevent or correct the aforesaid conditions.

104.     During the pertinent time period, the MBOE Defendants acted negligently and/or grossly negligently.  Said acts or omissions were described and set forth in more detail above, and include, but are not limited to the following:

(a)     failure to properly protect students within their supervisory control;

(b)     failure to properly monitor the physical whereabouts of students within their supervisory control;

(c)     failure to properly investigate allegations of bullying, intimidation, harassment, and/or physical abuse of students;

(d)     failure to take appropriate measures in response to allegations of bullying, intimidation, harassment, and/or physical abuse of students;

(e)     failure to ensure that victims of bullying and their families would not be retaliated against when seeking services and assistance;
(f)

(g)     failure to properly supervise students;

(h)     creation of, toleration of, and acquiescence in a school environment in which discrimination, bullying, intimidation, harassment, and hostile behavior against students, as Billy Roe experienced, was never adequately addressed;

(i)      failure to prevent, investigate, and/or take reasonable steps to eradicate acts of discrimination and racism against students;

(j)      Said actions and/or omissions constituted a willful disregard for the safety of Plaintiff Billy Roe;

(k)      The MBOE Defendants, for years, allowed Billy Roe to be bullied, discriminated against, harassed and subjected to an extremely hostile educational environment while in their custody and control;

(l)      Unknown employees and agents, John/Jane Does # 1-15 knew or had reason to know of the bullying, discrimination, unequal treatment, harassment, intimidation and retaliation by certain students at Manasquan Elementary School against and toward Plaintiff Billy Roe.  Despite this knowledge, the MBOE Defendants and John/Jane Doe Defendants took no preventative or remedial action;

(m)      At all times relevant hereto, by operation of State law, the MBOE Defendants had the constitutionally required, non-delegable duty and responsibility for Billy Roe's care, safety, protection, and supervision;

(n)      The MBOE Defendants are subject to the requirements of the United States Constitution, the New Jersey Constitution, the United States Civil Rights Act (42 U.S.C. §1983), and the New Jersey Law Against Discrimination;

(o)      By reason of the unlawful and unconstitutional treatment of Billy Roe, by the aforementioned Defendants, Plaintiffs were required to and did employ legal counsel to ensure protection and redress for the deprivation of his constitutional and civil rights, as well as his statutory rights;

(p)      In addition, Plaintiffs contend that the acts and omissions of the Defendants resulted in violations of the United States Constitution, which are actionable pursuant to the United States Civil Rights Act (Section 1983) and the New Jersey State Constitution and the laws of New Jersey.  Defendants' misconduct included and resulted in:

(i)      the failure to protect Billy Roe from reasonably foreseeable harm;

(ii)      the unreasonable creation of and aggravation of a dangerous situation ("State Created Danger");

(iii)      unconstitutional policies, practices, and customs; and

(iv)      deliberate indifference to Billy Roe's safety and well-being.

25

(q)     The MBOE Defendants are liable for constitutional deprivations, as a result of their actual knowledge and acquiescence with respect to the dangers posed by long time bullying behavior towards Plaintiff Billy Roe and by their own failure to properly enforce their anti-discrimination, bullying and harassment policies, even after multiple incidents and literally years of discrimination, bullying and harassment, perpetrated against Plaintiff Billy Roe.

105.    The MBOE Defendants were entrusted with the care of, supervision of, and safekeeping of the students, including Plaintiff Billy Roe, required by law to attend the school.

106.    The continued discrimination against, bullying, harassment and retaliation of Plaintiff Billy Roe was a direct and proximate result of the negligence and gross negligence of all of the MBOE Defendants named herein.  Such negligence and gross negligence are described in detail above, and included, but is not limited to:

(a)     Toleration of an extremely hostile educational environment, one that included both discrimination and bullying;

(b)     failing to provide regular and continuous observation and supervision and/or control of students, including Plaintiff Billy Roe and the tormentors of Billy Roe;

(c)     failing to investigate reported acts of bullying in such a way that did not created additional hostility towards Plaintiff;

(d)     failing to take meaningful action in response to incidents of bullying, racism, discrimination and harassment against Plaintiff Billy Roe;

(e)     failing to anticipate and take preventive measures to protect Plaintiff from retaliation and further hostility in response to their bullying investigations and subsequent discipline of wrongdoers;

(f)     failing to properly protect Plaintiff; and

(g)     failing to take reasonable precautions to ensure Plaintiff's safety and well-being.

26

107.    In addition to the negligent acts and omissions surrounding the Defendants'
handling of students discriminating against, tormenting and bullying Billy Roe, and their
failure to prevent, detect, and correct the bullying and hostile behavior, the MBOE
Defendants' negligence continued after the Plaintiffs reported the violent and harassing
behavior.

108.    The MBOE Defendants were also negligent in their mishandling of Plaintiff's
injuries and related disabilities and his need for protection and services as a result of the
hostile educational environment.

109.    The negligence of the MBOE Defendants, including, MBOE President
Eugene Cattani, Jr., School District Superintendent Dr. Frank Kasyan, Manasquan
Elementary School Principal Colleen Graziano,  Manasquan Elementary School Assistant
Principal Richard Kirk, Manasquan Elementary School Bullying Specialist Anthony Cinelli,
Manasquan Elementary School Special Education Supervisor Margaret Polak, Manasquan
Elementary School Psychologist Theresa Savage, Manasquan Supervisor of Elementary
Instruction Justin Roach, Manasquan Elementary School Teachers Brian McCann and
Jessica Woytowicz,  Manasquan After Care Teacher Collins and Manasquan
Paraprofessional McLaughlin, and John/Jane Does # 1-15, as aforesaid, is imputed to the
named Defendants by virtue of vicarious liability and the doctrine of *Respondeat Superior.*

110.    As a direct and proximate result of the negligence and/or misconduct of
Defendants, including Defendants' failure to properly implement and enforce proper and
effective policies and procedures regarding: (a) bulling, discrimination, racism, harassment
and intimidation; (b) supervision of students known to be bullying and harassing tormentors

27

of other students; (c) failure to properly assist and help Plaintiff Billy Roe, subsequent to these years of bullying, discrimination, threats, harassment and retaliation.

111.    Plaintiff Billy Roe has suffered permanent, severe, and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, a diminished childhood and diminished enjoyment of life.

112.    Plaintiffs C.W. and K.W. have expended and will be required to expend sums for medical and psychological care and treatment and will otherwise suffer economic losses. The events directly impaired and interfered with Plaintiff Billy Roe's ability to obtain an education and will impact his future employment opportunities.

**COUNT TWO**
**HOSTILE EDUCATIONAL ENVIRONMENT IN VIOLATION OF**
**THE NEW JERSEY'S LAW AGAINST DISCRIMINATION AND**
**THE CIVIL RIGHTS ACT OF 1964**

113.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth fully at length herein.

114.    The MBOE Defendants knew, or should have known, of the discrimination and extremely hostile educational environment faced by Billy Roe, on a daily basis, yet failed to take steps reasonably calculated to end the mistreatment and offensive conduct.

115.    The MBOE Defendants had not and would not do anything to the group of kids that wished to torment and break Billy Roe with their continued harassment and bullying.

116.    The MBOE Defendants were provided with the tape-recorded audio of the following sexually harassing and discriminatory comments made to Plaintiff Billy Roe by a female student:

28

a) Stating that **Billy Roe is "*gay*"**;

b) **Mocking** him as to the **size of his genitals**;

c) Same female student telling Billy Roe that he needs to **buy himself a bra** – "*Go to Walmart and get a bra*";

d) Same female student asking Billy Roe to be in their "**Drag Show**";

e) Same female student telling Billy Roe to "***cut off* [his] *nipples* and *start acting like a man***";

f) Same female student telling him: "*We don't need to hear your moaning while you're **jerking off**";

117.   The MBOE Defendants found the female student's comments to not be discriminatory nor sexually harassing and, once again, the Defendants did nothing.

118.   The direct result of the failures to act, and/or ineffective actions, by the MBOE Defendants was the creation of, a tolerance of, and acquiescence in a hostile educational environment for Plaintiff Billy Roe, in violation of NJLAD and The Civil Rights Act of 1964, for which each is liable.

119.   The MBOE Defendants had a duty to take actions reasonably calculated to end the discrimination against, hostility toward, and the mistreatment and offensive conduct directed at Plaintiff Billy Roe.

120.   The hostile, unsafe, discriminatory environment had the actual effect of interfering with Billy Roe's education and his right participate in or benefit from the services, activities, or opportunities in the education program in the School District.

121.   Defendants' actions and inactions in failing to protect Plaintiff Billy Roe from severe, pervasive and/or persistent bullying, discrimination, harassment and intimidation,

and the resulting creation of a hostile educational environment, resulted in disparate treatment and/or unequal access to accommodations, advantages, facilities, or privileges of the school for this young man.

122.   The hostile educational environment and the disparity of conditions and treatment and/or unequal access to services for Plaintiff Billy Roe by the MBOE Defendants denied him the opportunity to obtain all of the accommodations, advantages, facilities and privileges of Defendants' School, a place of public accommodation, and a federally funded institution, by virtue of his perceived sexual orientation/gender in violation of the New Jersey Law Against Discrimination and the United States Civil Rights Act of 1964,  42 *U.S.C.* §1971 *et seq.*

123.   As a direct result of said acts, and failures to act, Plaintiff Billy Roe has suffered permanent, severe, and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, a diminished childhood and a diminished enjoyment of life.

124.   Plaintiffs C.W. and K.W. have expended and will be required to expend sums for medical and psychological care and treatment and will otherwise suffer economic losses. The events directly impaired and interfered with Plaintiff Billy Roe's ability to obtain an education and will impact his future employment opportunities.

**COUNT THREE**
**RETALIATION**
**The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1,** *et. seq*
**(This Count has Been Dismissed By The Court.)**

125.   The Plaintiffs repeat each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth at length herein.

126.   As set forth above, schools have "clear affirmative legal responsibilities" to address bullying conduct. Plaintiff Billy Roe and his parents fulfilled their responsibility by alerting, repeatedly, for years, the pertinent school officials of the ongoing bullying and harassment.

127.   The MBOE Defendants did next to nothing to fulfill its "clear affirmative legal responsibilities".

128.   The bullying, harassment, and hostile educational environment were directed at Plaintiff, at least in part, due to his disabilities and based on gender and perceived sexual orientation.

129.   Plaintiffs were targeted for retaliation for their having made complaints about both peer- on-peer misconduct and staff misconduct.

130.   It was the documented lengthy failure to provide Plaintiff with a safe supportive and nurturing school environment, and it was the MBOE Defendants' tolerance of a hostile, abusive and discriminatory environment, that led to Plaintiff's parents' decision to have to sell their home and move to a different school district to keep their son safe.

131.   Defendants' acts retaliation violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et. seq.*

132.   Defendants' retaliatory actions and reprisals were in direct response to Plaintiffs' exercise of their legally protected rights.  This retaliation was in clear violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et. seq.*

133.   The retaliatory acts committed by Defendants and/or other employees and/or representatives of Defendants were willful, intentional, wanton, evil-minded,

outrageous, reckless, and malicious and were made with the intent to injure Plaintiff Billy Roe.

134.    The actual participation, approval, acquiescence in, and/or willful indifference of the MBOE Defendants and/or other representative of Defendants regarding the reprisals and/or other retaliatory conduct in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et. seq.,* set forth herein also make the Defendants liable for punitive damages.

135.    As a direct and proximate result of this retaliatory conduct, Plaintiff suffered and continues to suffer substantial loss of education and other pecuniary harm, reputation, loss of esteem, disruption of his personal life, emotional distress, trauma and anxiety and other irreparable harm, pain and suffering.

**COUNT FOUR**
**42 U.S.C. §1983- VIOLATION OF FIRST AMENDMENT**
**(Interference and Retaliation)**

136.    Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as if set forth fully herein.

137.    **Plaintiffs specifically include and incorporate Paragraphs #68-96 above herein.**

138.    **As more fully described above, Defendants Graziano, Kirk, Polak, Collins, McLaughlin, McCann, Hagel, and Woytowicz took direct, personal adverse action against Plaintiff as a result of his expression of political and religious speech.**

139.    **That adverse action took the form of interference with that speech, the prevention of that speech, and even the scolding and retaliation of Billy because of that**

speech.

140.    **After being made aware of the First Amendment interference, none of the above Defendants (Supervisory and Policymaker Defendants like Graziano and Kirk) took steps to correct or cure the problem, nor stop the unconstitutional conduct.**

141.    **Instead, the Supervisory/Policymaker Defendants Graziano and Kirk approved of the interference with Billy's political and religious speech.**

142.    **These Defendants (Graziano and Kirk) utilized their Supervisory authority to approve of the First Amendment interference and/or failed to utilize their Supervisory authority to eliminate such interference.**

143.    **These Defendants (Graziano and Kirk) were deliberately indifferent to the First Amendment violations.**

144.    **The above factual allegations demonstrate the existence of an unconstitutional policy, practice and custom to interfere with, limit and even eliminate, a student's (such as Billy Roe) First Amendment rights to engage in political and religious speech.**

145.    **That specific unconstitutional policy, practice, and custom includes limiting and eliminating student speech that is favorable to (a) Christianity and/or Jesus; and/or (b) conservative political figures such as Donald Trump.**

146.    **Defendants' (the MBOE, and specific Individual Defendants identified above) actions and policy, practice, and custom were not "viewpoint neutral".**

147.    **Defendants Graziano, Kirk, Polak, Collins, McLaughlin, Hagel, McCann, and Woytowicz interfered with Plaintiff Billy Roe's speech solely to suppress his points**

of view on religion and politics, including specifically Christianity, Jesus and Donald Trump.

148.   **The above unconstitutional misconduct constituted viewpoint discrimination by Defendants Graziano, Kirk, Polak, Collins, McLaughlin, McCann, Hagel, and Woytowicz.**

149.   **Defendants Graziano, Kirk, Polak, Collins, McLaughlin, McCann, Hagel, and Woytowicz discriminated against Plaintiff's speech based on its religious content and its political content.**

150.   **Defendants Graziano, Kirk, Polak, Collins, McLaughlin, McCann, Hagel, and Woytowicz sought to and indeed did unconstitutionally suppress what they deemed to be an unpopular viewpoint.**

151.   Under 42 U. S. C. §1983, the MBOE Defendants violated the First Amendment by interfering with Plaintiff Billy Roe's **protected speech, including his political** and religious **viewpoints**.

152.   Plaintiff's First Amendment rights have been generally, and without justification, violated by Defendants' threats to prevent, and the actual prevention of, the exercise of that right.

153.   As stated more fully above, Billy Roe had been blocked, harassed, retaliated against, and even disciplined, when he attempted to express his opinions and beliefs on issues of politics and religion.

154.   The illegal and unconstitutional acts of the MBOE **and Defendants Graziano, Kirk, Polak, Collins, McLaughlin, McCann, Hagel, and Woytowicz**

constituted acts and a custom and/or policy to interfere with Plaintiff's First Amendment rights under 42 U.S.C. §1983

155.    Defendants, under color of state law, deprived Plaintiff of his rights, privileges and immunities secured by the Constitution of the United States by, among other things:

(a)    Denying Plaintiff his constitutional right to free exercise of speech, as well as retaliating against the Plaintiff because of his First Amendment activities; and

(b)    Engaging in a pattern of unlawful conduct designed to thwart Plaintiff's right to free speech, which includes acts of intimidation, harassment, and retaliation.

156.    Defendants interfered with or attempted to interfere with Plaintiff's exercise or enjoyment of the substantive rights, privileges and immunities secured by the Constitution of the United States by way of intimidation and retaliation.

157.    Each Individual Defendant was acting, at all relevant times, in furtherance of his/her duty to their employer Defendant MBOE.

158.    Defendants' threats to prevent and the actual prevention of Billy Roe exercising his First Amendment rights, also, in the alternative, constitute an impermissible content-based prior restraint of Plaintiff's constitutionally protected expression based upon the anticipated content of such an expression.

159.    Defendants' threats to prevent and the actual prevention of Billy Roe's speech, because they disagree with the content of such, constitutes impermissible selective exclusion based upon the anticipated content of Plaintiff's otherwise lawful speech and political activities.

160.    As a result of the interference, intimidation, retaliation, and unconstitutional

35

conduct Plaintiff has been damaged. Accordingly, the actions of Defendants, under current federal law, violated Plaintiff's First Amendment Rights under the Constitution of the United States and such violations are likely to continue unless enjoined by this Court.

161.   As a proximate result of the aforementioned acts, including violation of his civil rights, Plaintiff has been damaged, and has suffered mental distress and anguish and other proximately caused damages

**COUNT FIVE**
**42 U.S.C. § 1983 DELIBERATE INDIFFERENCE**
**(Unconstitutional Policies/Practices/Customs**
**As To First Amendment Violations Only)**

162.   The Plaintiffs repeat each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth at length herein.

163.   The MBOE Defendants are liable for establishing and maintaining, with deliberate indifference to the consequences of said acts/omissions, a policy, practice, and/or custom of failing to take appropriate  action with respect to (a) **interference with and the suppression of student speech based on its religious and political content, as described more fully above**; (b) **allowing, tolerating, affirming and approving of viewpoint discrimination at school, as demonstrated more fully above**; (c) **suppressing students' speech that is favorable to Christianity, Jesus, and/or conservative political figures such as Donald Trump**; and/or (e) the training of their staff with respect to each of these duties and obligations, which directly and proximately caused Plaintiff's constitutional harm in violation of 42 U.S.C. §1983.

164.   The **First Amendment violations and interference by the Individual Defendants Polak, Collins, McLaughlin, McCann, Hagel, and Woytowicz,** were a direct

36

and proximate result of the MBOE Defendants', **including the MBOE, Principal Graziano and Assistant Principal Kirk,** deliberate indifference.

165.    By reason of the unlawful and unconstitutional treatment of Plaintiff Billy Roe by the aforementioned Defendants, Plaintiffs C.W. and K.W. were required to and did employ legal counsel to ensure protection and redress for the deprivation of their son Billy Roe's constitutional and civil rights.

166.    As a direct and proximate cause of the Defendants' creation, acquiescence in and aggravation of a dangerous situation, Plaintiff Billy Roe sustained a loss of Constitutional Rights and Privileges.

167.    As a direct result of said acts, Plaintiff Billy Roe has suffered permanent, severe and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, a diminished childhood and diminished enjoyment of life, and Plaintiffs C.W. and K.W. have been and will be required to expend diverse sums for medical and psychological care and treatment of their son Billy Roe.

**COUNT SIX**
**42 U.S.C. §1983 STATE CREATED DANGER**

168.    The Plaintiffs repeat each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth at length herein.

169.    During Plaintiff Billy Roe's Elementary School years, the MBOE Defendants, under the color of law, acted intentionally and/or with deliberate indifference, in executing or failing to execute customs, practices, rules, procedures and/or policies, and otherwise engaged in acts or omissions such as to deprive Billy Roe of his constitutional rights and privileges protected under the United States Constitution.  The acts committed against

Plaintiff Billy Roe constitute a violation of his rights pursuant to the United States Constitution.

170.    Specifically, as set forth above, The MBOE Defendants were aware of the bullying, harassing, hostile, discriminatory and inappropriate conduct Billy Roe was being exposed to.  As a result of these numerous incidents, a hostile educational environment in place for years, the MBOE Defendants knew that there was an obvious and constant threat to Plaintiff, which would interfere with his access to school and cause him injury. Despite this notice and knowledge, the MBOE Defendants failed to take any reasonable steps to protect Plaintiff from this bullying, intimidation, harassment, discriminatory, assaultive, and hostile behavior.

171.    Again, Plaintiff specifically contends that the acts and omissions of the MBOE Defendants resulted in the unreasonable creation of and aggravation of a dangerous situation ("State Created Danger").

172.    As a direct and proximate cause of the MBOE Defendants' creation, acquiescence in and aggravation of a dangerous situation, Plaintiff Billy Roe sustained a loss of Constitutional Rights and Privileges, including but not limited to the right to equal access to education and to be free from intrusions into his personal privacy and bodily and emotional integrity.

173.    As a direct result of said acts, Plaintiff Billy Roe has suffered permanent, severe and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, a diminished childhood and diminished enjoyment of life, and Plaintiffs

C.W. and K.W. have been and will be required to expend diverse sums for medical and psychological care and treatment of their son Billy Roe.

## COUNT SEVEN

### VIOLATION OF THE NEW JERSEY CONSTITUTION AND THE NEW JERSEY CIVIL RIGHTS ACT

174.    The Plaintiffs repeat each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth at length herein.

175.    As set forth above, the MBOE Defendants acted under the color of law and with deliberate indifference, so as to deprive Plaintiff of his constitutional rights and privileges protected under the New Jersey Constitution.

176.    As set forth above, the MBOE Defendants, acted under the color of law and with deliberate indifference, so as to deprive Plaintiff of his constitutional rights and privileges protected under the New Jersey Civil Rights Act.

177.    As a direct and proximate cause of the MBOE Defendants' aforesaid acts of negligence, misconduct and omissions, Plaintiff sustained a loss of Constitutional Rights and Privileges, including but not limited to the right to be free from intrusions into his personal privacy and bodily integrity.

178.    As a direct cause of said acts, Plaintiff, has suffered permanent, severe and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, a diminished childhood and diminished enjoyment of life, and Plaintiff has been and will be required to expend diverse sums for medical and psychological care and treatment and will otherwise suffer economic losses from the normal pursuit of gainful employment.

**WHEREFORE,** Plaintiffs demand Judgment against Defendants, individually, jointly and severally for:

      A.      Compensatory damages;
      B.      Punitive damages;
      C.      Reasonable attorney's fees and costs;
      D.      Pre- and Post-Judgment interest;
      E.      Remedial relief and/or other equitable remedies available under the pertinent statutes;
      F.      A civil penalty be imposed against each culpable Defendant for each specific deprivation/violation; and
      G.      Such other and further relief as appears reasonable and just.

PATRICK J. WHALEN, ESQUIRE

Dated:  March 27, 2023

_s/Patrick J. Whalen (PW3066)_
*Attorney for Plaintiffs*


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues raised herein.

PATRICK J. WHALEN, ESQUIRE

Dated:  March 27, 2023

_s/Patrick J. Whalen (PW3066)_
*Attorney for Plaintiffs*

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Plaintiffs hereby designate Patrick J. Whalen, Esquire as trial counsel in the above-referenced matter.

Dated:  March 27, 2023

PATRICK J. WHALEN, ESQUIRE

*s/Patrick J. Whalen (PW3066)*
*Attorney for Plaintiffs*

## <u>CERTIFICATION</u>

I hereby certify that the matter in controversy in the within Complaint is not the subject of any other action pending in any other Court or of any arbitration proceeding.  No other action or arbitration proceeding regarding this matter is contemplated by Plaintiff.  I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:   March 27, 2023

PATRICK J. WHALEN, ESQUIRE

*s/Patrick J. Whalen (PW3066)*
*Attorney for Plaintiffs*